UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: DARLA J. KELLY,        No. 7-15-10164 JA
       Debtor.

EDWARD A. MAZEL, Chapter 7 Trustee
of the Bankruptcy Estate of Darla Kelly,

      Plaintiff,

v.        Adversary No. 15-1049 J

CLARE VARELA a/k/a CLARE GRIEGO,

      Defendant.

## MEMORANDUM OPINION

Plaintiff Edward A. Mazel, Chapter 7 Trustee of the Bankruptcy Estate of Darla Kelly ("Trustee"), seeks summary judgment on his claims to recover certain transfers of property. *See* Plaintiff's Motion for Partial Summary Judgment on Counts 2 – 8 ("Motion") – Docket No. 20. Trustee asserts that the alleged transfers are recoverable as preferential transfers under 11 U.S.C. § 547; as constructively fraudulent transfers under 11 U.S.C. § 548 and applicable state law; and as actual fraudulent transfers under 11 U.S.C. § 548 and applicable state law. Defendant Clare Varela a/k/a Clare Griego, opposes the motion. *See* Response to Plaintiff's Motion for Partial Summary Judgment on Counts 2 – 8 ("Response") – Docket No. 25.[1] For the reasons explained below, the Court finds that the Trustee has failed to establish sufficient facts not subject to genuine dispute to demonstrate that he is entitled to recover the alleged transfers under 11 U.S.C.

---

[1] The Trustee filed a reply. *See* Plaintiff's Reply in Support of Motion for Partial Summary Judgment on Counts 2 – 8 ("Reply") - Docket No. 26. In the Reply, the Trustee pointed out that Defendant's Response was untimely and requested the Court not to consider the Response. *See* Reply, p. 2. At a status conference held March 10, 2016, the Trustee withdrew this argument and agreed that the untimeliness of the Response is not a bar to the Court's consideration of it.

§ 547, § 11 U.S.C. § 548[2] or applicable state fraudulent transfer law. Accordingly, the Court will deny the Motion without prejudice.

## SUMMARY JUDGMENT STANDARDS

The proper use of summary judgment streamlines litigation and avoids the unnecessary expense of proceeding to trial. *See Farnell v. Albuquerque Publ'g Co.,* 589 F.2d 497, 502 (10th Cir. 1978) ("[S]ummary judgment is a useful tool which may avoid needless trials.") (citation omitted); *Mitchell v. Zia Park, LLC,* 842 F.Supp.2d 1316, 1321 (D.N.M. 2012) ("Principal purposes of summary judgment include streamlining litigation and saving needless time and expense by isolating and disposing of purely legal issues and factually unsupported claims and defenses.") (citing *Celotex Corp. v. Catrett,* 477 U.S. 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (remaining citation omitted)). In accordance with Fed.R.Civ.P. 56, the Court will grant summary judgment when the requesting party demonstrates that there is no genuine dispute as to a material fact and that the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a), made applicable to adversary proceedings by Fed.R.Bankr.P. 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323.

In considering a motion for summary judgment, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995) (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F2d 1238, 1241 (10th Cir. 1990)). The party opposing summary judgment "may not rest on its pleadings, but must bring

---

[2] All future statutory references in this Memorandum Opinion are to Title 11 of the United States Code.

forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Kannady v. City of Kiowa,* 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Jenkins v. Wood,* 81 F.3d 988, 990 (10th Cir. 1996)). To resist a properly supported motion for summary judgment, the opposing party may not rely on the allegations in the complaint or the denials contained in the answer, "but must set forth specific facts showing that there is a genuine issue for trial" through affidavits or other supporting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal quotation marks omitted).

New Mexico Local Bankruptcy Rule 7056-1 requires the movant to number all material facts movant contends are not subject to genuine dispute, with references to the portions in the record upon which the movant relies to establish each material fact. *See* NM-LBR 7056-1 ("The facts shall be numbered and shall refer with particularity to the portions of the record relied upon."). Similarly, the party opposing a motion for summary judgment must number each material fact the party contends is in genuine dispute, with references to particular portions of the record upon which the party relies, and must identify which of the moving party's numbered facts the opposing party contends are disputed. *See* NM-LBR 7056-1(b). Unless the party opposing summary judgment specifically controverts a material fact, all properly supported material facts identified in the motion for summary judgment are deemed admitted. *See* NM-LBR 7056-1(b) ("All facts in movant's statement of facts that are properly supported shall be deemed admitted unless respondent specifically controverts them."). The Court has discretion to summarily deny a motion for summary judgment that does not comply with NM-LBR 7056-1. *See* NM-LBR 7056-1(a) ("The court may summarily deny any motion that does not comply with this rule.").

3

Defendant is not represented by counsel. Her Response does not comply with the requirements of NM-LBR 7056-1(b) because it does not include a statement of numbered facts Defendant alleges are disputed, nor does the Response identify by number which of the Trustee's facts she contends are subject to genuine dispute. Instead, the Response attempts to address in narrative form the Trustee's statement of facts surrounding the transfers at issue in this adversary proceeding. The Response also attaches copies of various documents in support of Defendant's position. Despite Defendant's failure to comply with the requirements of NM-LBR 7056-1(b), the Court will consider the substance of Defendant's Response together with the documents attached to the Response to determine whether any of Trustee's properly supported material facts are subject to genuine dispute.

## FACTS NOT SUBJECT TO GENUINE DISPUTE

1. Darla J. Kelly ("Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on January 28, 2015. Complaint, ¶ 1 (Docket No. 1); Response to Complaint, ¶ 1 (Docket No. 12) ("I agree that regarding filing of bankruptcy but was not notified as such and had no knowledge of.").

2. Pre-petition, Debtor borrowed money from Defendant Clare Varela a/k/a Clare Griego on several occasions. *See* Motion, ¶ 15 (referencing pre-existing promissory notes executed by the Debtor in favor of the Defendant); Response, p. 2 ("Debtor Darla Kelly had borrowed money from Defendant Clare Varela a/k/a Clare Griego for several years").

3. Defendant is the Debtor's cousin.[3]

---

[3] In support of this fact, The Trustee references the Complaint at ¶ 7, and Debtor's Amended Statement of Financial Affairs filed in bankruptcy case No. 15-1-164-j7 as Docket No. 31. Defendant did not contest this fact.

4. Pre-petition, Debtor owned a 2001 Dodge Ram 3500 VIN # 1B7HF13Yo1J589507 (the "Dodge Truck"). *See* Motion, Exhibit B - Certificate of title for the Dodge Truck dated July 18, 2013 reflecting Darla Fox[4] as registered owner.

5. Debtor assigned the title of the Dodge Truck to Defendant on August 8, 2014. *Id.*; Response, p. 2 ("Debtor Darla Kelly gave her interest of the 2001 Dodge to Defendant Clare Varela a/k/a Clare Griego . . .").

6. Pre-petition, Debtor owned certain real property described as Meadow Lake Subdivision Unit 2, Tract 31, known as 57 Navajo Lane, Los Lunas, New Mexico (the "Navajo Lane Property"). *See* Motion – Exhibit D, Warranty Deed executed by Carol Trujillo dated April 10, 2007 conveying the Navajo Lane Property to Darla Fox.

7. A mobile home is situated on the Navajo Lane Property. *See* Motion – Exhibit D, Property Record Card from the Valencia Assessor; Response, p.2.

8. On December 11, 2014, Debtor conveyed the Navajo Lane Property to Defendant by Warranty Deed. *See* Motion – Exhibit C, Warranty Deed executed by Darla J. Kelly dated December 11, 2014 conveying the Navajo Lane Property to Clare Varela.

9. On the same date, Debtor conveyed certain real property described as Meadow Lake Subdivision Unit 2, Tract 101 (the "Vacant Land") to Defendant. *See* Motion – Exhibit E, Warranty Deed executed by Darla J. Kelly dated December 11, 2014 conveying the Vacant Land to Clare Varela.

---

[4] The Trustee did not specify that Darla Kelly used to be known as Darla Fox in his numbered list of undisputed material facts. The Court infers this fact (and infers further that such fact is undisputed) from the exhibits attached to the Trustee's Motion which refer to Darla Fox together with the copies of promissory notes attached to Defendant's response which likewise refer to Darla Fox. *See* Fed.R.Civ.P. 56 (c)(2) (affording the court discretion to consider a fact undisputed for purposes of the motion even if the party fails to properly support an assertion of fact).

5

10. Debtor transferred the Dodge Truck, the Navajo Lane Property, and the Vacant Land to Defendant in payment of existing indebtedness Debtor owed to Defendant.  *See* Motion, ¶ 15; Response, p. 2 ("Debtor Darla Kelly gave her interest of the 2001 Dodge to Defendant Clare Varela a/k/a Claire Griego for moneys owed to her."  "Debtor Darla Kelly had borrowed money from Defendant Clare Varela for several years, and agreement was made to take the "Properties" in payment of debts owed to Defendant Clare Varela a/k/a Clare Griego.").

11. The value of the Debtor's scheduled assets as of the petition date was $84,750.00.  *See* Debtor's Bankruptcy Case No. 15-10164-j7 – Docket 1.

12. The total amount of the Debtor's scheduled liabilities as of the petition date was $142,680.19.  *Id.*

DISCUSSION

Section 547 of the Bankruptcy Code authorizes the Trustee to avoid preferential transfers for the benefit of the bankruptcy estate.  It provides, in relevant part:

> Except as provided in subsections (c) and (i)[5] of this section, the trustee may avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>     (A) on or within 90 days before the date of the filing of the petition; or
>     (B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if—
>     (A) the case were a case under chapter 7 of this title;
>     (B) the transfer had not been made; and
>     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

---

[5] Neither of these exceptions apply.  Subsection (c) limits the trustee's ability to recover transfers of "a contemporaneous exchange for new value" and transfers made in the ordinary course of business or financial affairs of the debtor.  11 U.S.C. § 547(c).  Subsection (i) applies to transfers by the debtor made "to an entity that is not an insider for the benefit of a creditor that is an insider."  11 U.S.C. § 547(i).

6

11 U.S.C. § 547(b).

An avoidable preferential transfer under § 547(b) has six elements: 1) the debtor must have had an interest in the transferred property; 2) the transfer must be to a creditor, or for the benefit of a creditor; 3) the transfer must be on account of a debt owed by the debtor to the creditor before the transfer was made; 4) the transfer must be made at a time that the debtor is insolvent; 5) the transfer must have occurred within the preference period – i.e., within 90 days before the date of the petition, or, if the creditor is an insider, between 90 days and one year of the petition date; and 6) the transfer must enable the creditor to receive more than the creditor otherwise would have received if the transfer had not occurred and the bankruptcy estate were liquidated under Chapter 7. 11 U.S.C. § 547(b). *See also, Brown v. KOT, Inc. (In Hertzler Halstead Hosp.),* 334 B.R. 276, 286 (Bankr.D.Kan. 2005) (enumerating the six elements) (citing *In re M & L Bus. Mach. Co., Inc.,* 84 F.3d 1330, 1339 (10th Cir. 1996)). The trustee bears the burden of proving every element establishing a preferential transfer by a preponderance of the evidence. *See* 11 U.S.C. § 547(g) ("the trustee has the burden of proving the avoidability of a transfer under subsection (b)"); *ABB Vecto Gray, Inc. v. First Nat'l Bank (In re Robinson Bros. Drilling, Inc.),* 9 F.3d 871, 874 (10th Cir. 1993) (acknowledging that "a trustee seeking to avoid an allegedly preferential transfer under § 547 'has the burden of proving by a preponderance of the evidence every essential, controverted element resulting in the preference.'") (quoting 4 *Collier on Bankruptcy,* ¶ 547.21[5] at 547-93 (15th ed. 1993) (remaining citation omitted)); *Payne v. Clarendon Nat'l Ins. Co. (In re Sunset Sales, Inc.),* 220 B.R. 1005, 1017 (10th Cir. BAP 1998) (it

is "the Trustee's burden to establish all elements of § 547(b), including insolvency.") (citations omitted).[6]

With respect to the insolvency element under § 547(b)(3), the Trustee is entitled to a presumption of the Debtor's insolvency for transfers made within 90 days of the petition date. *See* 11 U.S.C. § 547(f) ("For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition."). Unless the creditor presents evidence to rebut the statutory presumption of insolvency, the presumption is sufficient to satisfy the insolvency element on summary judgment. *See Sandoz v. Fred Wilson Drilling Co. (In re Emerald Oil Co.),* 695 F.2d 833, 835 (5th Cir. 1983) (affirming the bankruptcy court's grant of summary judgment on the issue of insolvency where the opposing party failed to sufficiently rebut the presumption to trigger the requirement for the trustee to provide additional evidence of insolvency at the time of the transfer); *Floyd v. Shindler (In re Rodriguez),* 204 B.R. 510, 517 (Bankr.S.D.Tex. 1995) (citation omitted) ("A trustee is not required to present evidence on insolvency [for transfers made within 90 days before the petition date] unless a defendant first presents some evidence to rebut the presumption") (citation omitted); *Maloney-Crawford, Inc. v. Huntco Steel, Inc., (In re Maloney-Crawford, Inc.),* 144 B.R. 531, 535and 537 (Bankr.N.D.Okla. 1992) (where creditor provided insufficient evidence to rebut the presumption of insolvency, the undisputed facts were sufficient to establish insolvency for purposes of avoiding a preferential transfer under § 547(b)).

---

[6] *See also, Shapiro v. Art Leather, Inc. (In re Connolly North America, LLC),* 398 B.R. 564, 569 (Bankr.E.D.Mich. 2008) ("[T]he Trustee has the burden of proving each of the elements of avoidability under § 547(b), by a preponderance of the evidence.") (citations omitted).

8

The Dodge Truck

The Trustee asserts that the Dodge Truck is avoidable as a preferential transfer to an insider of the Debtor made between ninety days and one year before the petition date. The facts not subject to genuine dispute establish that the Debtor had an interest in the Dodge Truck, transferred the Dodge Truck to Defendant, and made the transfer on account of a debt owed by the Debtor to the Defendant before the transfer was made, satisfying elements 1), 2), and 3). However, the undisputed facts are insufficient to satisfy element 4), insolvency.

Even if the Court were to accept that the Defendant, who is the Debtor's cousin, is an "insider"[7] for purposes of 11 U.S.C. § 547(b)(4)(B), the Trustee has failed to establish that the transfer of the Dodge Truck was made at a time that the Debtor was insolvent. Debtor transferred the Dodge Truck to Defendant on August 8, 2014, less than a year, but more than 90 days before the date of the filing of the petition on January 28, 2015. The Trustee cannot, therefore, rely on the presumption of insolvency under 11 U.S.C. § 547(f) to establish the insolvency element with respect to this transfer. Instead, the Trustee invites the Court to infer the Debtor's insolvency based on the undisputed fact that the Debtor borrowed money from Defendant "for years" and on the fact that Debtor's Schedule D reflects that her former spouse obtained a judgment against her in February of 2014 and another judgment in August of 2014 resulting in a scheduled obligation as of the petition date in the amount of $31,907.49. *See* Motion, ¶17. The Court is not willing to make the inference that the Debtor was insolvent at the time of the transfer of the Dodge Truck based on those facts.

---

[7] For individual debtors, the Bankruptcy Code defines "insider" to include a "relative of the debtor." 11 U.S.C. § 101(31)(A)(i). A cousin may be a sufficiently close relationship to fall within the definition of insider. *See O'Neal v. Arnold (In re Gray),* 355 B.R. 777 (Bankr.W.D.Mo. 2006) (comparing the common law approach to consanguinity to the civil law approach under Missouri law and concluding that a first cousin of the debtor, once removed, was an insider of the debtor).

9

A debtor is "insolvent" if the debtor's financial condition shows that the total amount of the debtor's debts exceeds the total value of the debtor's assets. *See* 11 U.S.C. § 101(32)(A) (defining "insolvent" as a "financial condition such that the sum of such entity's[8] debts is greater than all of such entity's property, at fair valuation"). That the Debtor's Schedules show insolvency as of the petition date, and that the Debtor's former spouse obtained a judgment against her some months before the subject transfer, and another judgment a few days before the subject transfer falls short of establishing the Debtor's insolvency at the time the Dodge Truck was transferred. A debtor's Schedules alone are insufficient to establish insolvency at a date more than 90 days before the date of the filing of the petition. *See Agin v. Akbarieh (In re Mustaq),* 2011 WL 3503145, *1 (Bankr.D.Mass. Aug. 10, 2011) (the court may not "infer insolvency on earlier dates from a debtor's schedules alone.").[9] "[I]nsolvency on the date of preference is the critical issue, and insolvency on any other date is insufficient standing alone to prove this essential element of a preference." *Inter-State Nat'l Bank v. Luther (In re Garden Grain & Seed Co.),* 221 F.2d 382, 391 (10th Cir. 1955) (citation omitted). The facts not subject to genuine dispute are insufficient to satisfy the insolvency requirement with respect to the Debtor's transfer of the Dodge Truck.

### The Navajo Lane Property and the Vacant Lot

The undisputed facts establish that the Debtor's transfers of her interests in the Navajo Lane Property and the Vacant Lot to Defendant were made on account of antecedent debts

---

[8] Section 101(32)(A) uses the word "entity." The Bankruptcy Code defines "entity" to include a "person." 11 U.S.C. § 101(15).

[9] *See also McClung-Logan Equip. Co., Inc. v. Friedman,* 195 F.2d 516, 516 (4th Cir. 1952) (stating that "[s]chedules filed by the bankrupt . . . are not of themselves sufficient to show insolvency at an earlier period," but holding that proof of a debtor's insolvency at a later date combined with sufficient evidence that there has been no substantial change in the debtor's assets and liabilities between the earlier date and the later date is sufficient to prove insolvency at the earlier date).

Debtor owed to Defendant, and were made within 90 days of the date of the filing of the petition date. The Trustee is entitled to the presumption of insolvency with respect to these transfers. Thus the Trustee has satisfied elements 1), 2), 3), 4), and 5) necessary to establish an avoidable preferential transfer under § 547(b). The only element at issue with respect to the transfers of these two properties is element 6), found in § 547(b)(5): whether the transfers enabled Defendant to receive more than she otherwise would have received in a Chapter 7 liquidation had the transfers not occurred.

The Trustee relies upon case law which holds that this element can be satisfied upon a showing that unsecured creditors will not receive a 100% distribution on their claims through a hypothetical chapter 7 liquidation. *See, e.g., Palmer Clay Products Co. v. Brown,* 297 U.S. 227, 229, 56 S.Ct. 450, 80 L.Ed. 655 (1936) (explaining that a payment of 10 per cent on account of a claim "will necessarily result in such creditor receiving a greater percentage than other creditors, if the distribution in bankruptcy is less than 100 per cent").[10] If the assets in the bankruptcy estate are insufficient to pay all unsecured creditors' claims in full, *any* pre-petition distribution to an unsecured creditor will enable that creditor under most circumstances to receive more than the creditor would otherwise be entitled to receive had the transfer not been made.[11] *See Still v.*

---

[10] *See also, In re Vaso Active Pharm., Inc.,* 537 B.R. 182, 189 (D.Del. 2015) (stating that "the Trustee need only establish that [creditor] would have received less than a 100% payout on his unsecured, nonpriority claim in a hypothetical chapter 7 liquidation.") (citations omitted)); *Skehen v. Bare Bones Graphics (In re Sweet),* 2009 WL 485136, *3 (Bankr.D.N.M. Feb. 25, 2009) ("unless there are sufficient assets to pay all unsecured claims in full, the transfer . . . would enable [creditor] to receive more than it would otherwise be entitled to receive . . .") (citing *Rodriguez v. Whatcott (In re Walker),* 389 B.R. 746, 749 (Bankr.D.Colo. 2008)); *Silagy v. Jay's Auto Sales, Inc. (In re Jackson),* 2006 WL 3064087, *3 (Bankr.N.D.Ohio Oct. 23, 2006) (noting that "[w]hen dealing with unsecured creditors, courts have found that unless unsecured creditors are to receive a one hundred percent distribution from the estate, any payment an unsecured creditor receives during the preference period naturally entitles it to more than it would receive in the hypothetical liquidation") (citations omitted)).

[11] Defendant attached to her response a copy of several promissory notes the Debtor executed in favor of Defendant. One promissory note in the principal amount of $9,500 executed by the Debtor on April 25, 2012, 2012 provides for payment in "36 equal payments of $250.00 + Balance at end of 36 months or in lieu of property at 57 Navajo Ln Los Lunas, & additional lot vacant." *See* Response, Exhibit M. The note, which was not recorded in the real property records, is insufficient to create a security interest in the Navajo Lane Property or the Vacant Lot that would affect the title or rights of any purchaser, mortgagee, or judgment lien creditor without knowledge of the existence of the

11

*Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.),* 930 F.2d 458, 465 (6th Cir. 1991) ("Unless the estate is sufficient to provide a 100% distribution, any unsecured creditor . . . who receives a payment during the preference period is in a position to receive more than it would have received under a Chapter 7 liquidation.") (citation omitted); *Elliott v. Frontier Properties (In re Lewis W. Shurtleff, Inc.),* 778 F.2d 1416, 1421 (9th Cir. 1985) ("as long as the distribution in bankruptcy is less than one-hundred percent, *any* payment 'on account' to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made.") (citations omitted); *Vaso,* 537 B.R. at 189 (upon a showing of less than 100% distribution to unsecured creditors, any payment "received from the Debtor on account of an outstanding debt would have necessarily increased [the creditor's] share of the recovery") (citation omitted)).

The petition date is the relevant date for conducting the hypothetical liquidation analysis under § 547(b). *In re Castletons, Inc.,* 990 F.2d 551, 554 (10th Cir. 1993) (citations omitted). The Debtor's Schedules show that on the petition date, the total amount of the Debtor's scheduled debts exceeds the total amount of the Debtor's scheduled assets by approximately $58,000. However, this element of § 547(b) requires the Court to value the bankruptcy estate as if the transfer had not occurred. *See* 11 U.S.C. § 547(b)(5)(B). The Court must, therefore, include the value of the transferred asset before evaluating the "hypothetical liquidation" to determine the expected distribution to creditors through a Chapter 7 liquidation. *See Connolly North America,* 398 B.R. at 571 (explaining that the court determines "the liquidation value of

---

unrecorded note. N.M.S.A. 1978 § 14-9-3 ("No deed, mortgage or other instrument in writing not recorded in accordance with Section 14-9-1 NMSA 1978 shall affect the title or rights to, in any real estate, of any purchaser, mortgagee in good faith or judgment lien creditor, without knowledge of the existence of such unrecorded instruments."). Defendant is, therefore, an unsecured creditor for purposes of applying § 547(b).

12

the assets that were in the bankruptcy estate when the bankruptcy petition was filed, and . . . add[s] to that the value of the allegedly preferential transfers that the Trustee seeks to avoid."). The Court then compares what the transfer enabled the creditor to receive with what the creditor would have received if case were administered under Chapter 7 including the transferred asset. *See Castletons,* 990 F.2d at 555 (Section 547(b)(5) requires that the transfers enable the creditor "to receive more on its debt than would be available to it in a Chapter 7 distribution").

There is no evidence of the value of the Navajo Lane Property or the Vacant Lot currently before the Court. Nor is there sufficient evidence of the amount of Defendant's unsecured claim. Without these amounts, the Court cannot conclude that the transfer of the Navajo Lane Property and the Vacant Lot to Defendant enabled Defendant to receive more than she otherwise would have been entitled to receive had the transfer not occurred and the bankruptcy estate, including the Navajo Lane Property and the Vacant Lot, been liquidated and the proceeds distributed to creditors. It is possible (though not likely probable) that inclusion of the Navajo Lane Property and the Vacant Lot in the bankruptcy estate, even taking into account Ms. Varela's claim resulting from the avoidance of the transfers, would render the estate solvent. In addition, the promissory note for $9,500 executed on April 25, 2012, suggests that the Defendant may have accepted the Navajo Lane Property and the Vacant Lot in full satisfaction of the debt. The result of the transfer could be a discount of Defendant's claim that is less than the distribution she would otherwise have received from the bankruptcy estate had the transfer not occurred.

*The Trustee's Claims to Avoid the Transfers Based on Constructive Fraud*

The Trustee also seeks to avoid the transfers of the Dodge Truck, the Navajo Lane Property and the Vacant Lot premised on constructive fraud under §548(a)(1)(B) and applicable state

13

law.[12] Avoidance of a transfer as constructively fraudulent under both bankruptcy law and New Mexico law requires a showing that the debtor received less than reasonably equivalent value in exchange for the transfer and that the "lack of equivalent value received harmed creditors in one of the ways set forth in the applicable statute." *Wagner v. Cunningham (In re Vaughan Co., Realtors),* 481 B.R. 752, 762 (Bankr.D.N.M. 2012).[13] The Trustee has not established the value

---

[12] Under § 544(b)(1), "the trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." 11 U.S.C. § 544(b)(1). It is sufficient if "the trustee pleads the existence of a creditor who could have avoided the transfer[;] the trustee need not identify a specific creditor by name." 5 Collier on Bankruptcy, ¶ 544.06[1] (Alan N. Resnick and Henry J. Sommer, eds., 15th ed. 2012). The Trustee pleaded the existence of at least one or more creditors with matured or unmatured claims against the Debtor with respect to each state law claim asserted in the Complaint. *See* Complaint, Count 2 ¶ 24; Count 3, ¶ 28, Count 4, ¶ 31; and Count 5, ¶ 35 – Docket No. 1.

[13] Under § 548(a)(1)(B), the Trustee may avoid a transfer if the debtor:

> (i) Received less than a *reasonably equivalent value* in exchange for such transfer or obligation; and
> (ii)     (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation
>          (II) was engaged in a business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>          (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>          (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.
>
> 11 U.S.C. § 548(a)(1)(B) (emphasis added).

Similarly, under N.M.S.A. 1978 § 56-10-18(A)(2), a transfer is fraudulent as to present and future creditors if it was made:

> without receiving a *reasonably equivalent value* in exchange for the transfer or obligation, and the debtor:
>   (a) was engaged or about to engage in a business transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>   (b) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.
>
> N.M.S.A. 1978 § 56-10-18(A)(2).

And under N.M.S.A. 1978 § 56-10-19(A), a transfer is fraudulent as to a present creditor of the debtor,

> if the debtor made the transfer or incurred the obligation without receiving *reasonably equivalent value* in exchange for the transfer or obligation, and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
>
> N.M.S.A. 1978 § 56-10-19(A) (emphasis added).

14

of the Dodge Truck, the Navajo Lane Property or the Vacant Lot. Defendant attached copies of several promissory notes and personal checks written to Debtor evidencing money Defendant loaned to Debtor over the years.[14] Without knowing the value of the Dodge Truck, the Navajo Lane Property or the Vacant Lot, the Court cannot determine whether the Debtor received reasonably equivalent value in the form of debt forgiveness based on the transfer of those properties.

*The Trustee's Claims to Avoid the Transfers Based on Actual Fraud*

The Trustee seeks to avoid the transfers of the Dodge Truck, the Navajo Lane Property and the Vacant Lot based on actual fraud. To recover a transfer based on actual fraud, whether under the Bankruptcy Code or under New Mexico, law requires actual intent. *See* 11 U.S.C. § 548(a)(1) (a trustee may avoid a transfer if the debtor "made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . . indebted."); N.M.S.A. 1978 § 56-10-18(A)(1) (requiring that the transfer be made "with actual intent to hinder, delay or defraud any creditor of the debtor."). Because a debtor rarely admits to an intent to hinder, delay, or defraud, actual intent may be established based on the facts and circumstances surrounding the transfer, often referred to as the so-called "badges of fraud." *See Zubrod v. Kelsey (In re Kelsey),* 270 B.R. 776, 782 (10th Cir. BAP 2001) (noting that "[i]ntent to hinder, delay, or defraud creditors is rarely admitted by a debtor[;]" consequently "a court may consider circumstantial evidence establishing badges of fraud.") (citing *Taylor v. Rupp (In re Taylor),* 133 F.3d 1336, 1338-39 (10th Cir. 1998));

---

[14] Defendant attached the following documents to her Response:
    Exhibit G – check dated March 19, 2008 payable to Darla Kelly in the amount of $2,500;
    Exhibit F – check dated May 13, 2006 payable to Darla Kelly in the amount of $390.26;
    Exhibit K – Promissory Note dated March 23, 2010 in the amount of $3,500;
    Exhibit M – Promissory Note Dated April 24, 2012 in the amount of $9,500);
    Exhibit O – Promissory Note dated June 23, 2012 in the amount of $7,000; and
    Exhibit Q – Promissory Note dated October 54, 2012 in the amount of $3,700.

N.M.S.A. 1978 § 15-10-18(B);[15] *Lofstedt v. Kendall (n re Kendall),* 491 B.R. 191, *5 (10th Cir. BAP 2013) (Unpublished Decision) (observing that "[c]ircumstances that are so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent have become known as 'badges of fraud.'") (citing *In re Sharp Int'l Corp.,* 403 F.3d 43, 56 (2d Cir. 2005)).

However, even though a Court may infer a debtor's actual intent to hinder, delay, or defraud based on the existence of several badges of fraud, the focus of the Court's inquiry must be on the debtor's state of mind. "Because the Debtor's subjective intent is in issue, summary judgment is generally not an appropriate mechanism for adjudication of an actual fraudulent transfer claim." *Rieser v. Hayslip (In re Canyon Systems Corp.),* 343 B.R. 615, 636 (Bankr.S.D.Ohio. 2006) (citations omitted).[16]

The circumstantial evidence upon which the Trustee relies to establish the Debtor's actual intent to hinder, delay, or defraud, is not so overwhelming as to conclusively establish by

---

[15] The New Mexico statute identifies the following factors relevant to the determination of actual intent to hinder, delay, or defraud:
    (1) the transfer or obligation was to an insider;
    (2) the debtor retained possession or control of the property transferred after the transfer;
    (3) the transfer or obligation was disclosed or concealed;
    (4) before the transfer was made or the obligation was incurred, the debtor has been sued or threatened with suit;
    (5) the transfer was of substantially all of the debtor's assets;
    (6) the debtor absconded;
    (7) the debtor removed or concealed assets;
    (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
    (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
    (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
    (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

N.M.S.A. 1978 § 56-10-18(B).
[16] *See also, In re Kontrick,* 295 F.3d 724, 737 (7th Cir. 2002) (acknowledging that "[i]ntent is normally a question of fact and not often susceptible to summary judgment."); *Compton v. Herrman (In re Herrman),* 355 B.R. 287, 291 (Bankr.D.Kan. 2006) ("As a general rule, questions involving a person's intent or other state of mind cannot be resolved by summary judgment.") (citation omitted)).

Case 15-01049-j    Doc 29    Filed 04/14/16    Entered 04/14/16 13:57:20 Page 16 of 18

summary judgment the requisite actual intent necessary to recover the transfers. The Debtor's credibility must also be examined. *See Citizens Bank of Clearwater v. Hunt,* 927 F.2d 707, 711 (2d Cir. 1991) (whether property was transferred with actual intent to hinder, delay, or defraud creditors "involves issues of intent and credibility that were inappropriate for summary judgment and that should be resolved by the fact finder after a trial."). The Court declines to grant summary judgment on the Trustee's claims to recover the transfers based on actual fraud.

*The Trustee's Claims to Avoid the Transfer Under N.M.S.A. § 56-10-19(B)*

Finally, the Trustee seeks summary judgment on her claim to avoid the transfers of the Dodge Truck, the Navajo Lane Property and the Vacant Lot under N.M.S.A. 1978 § 56-10-19(B). That statute provides:

> A transfer made by a debtor is voidable as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.

N.M.S.A. 1978 § 56-10-19(B).

The facts not subject to genuine dispute may be sufficient to establish that the transfers to Defendant were made to an insider, the Debtor's cousin,[17] and that the Defendant/insider, who loaned money to Debtor many times over the years "had reasonable cause to believe that the debtor was insolvent." N.M.S.A. 1978 § 50-10-19(B). But the Trustee has not established sufficient facts to establish insolvency at the time of each of the transfers as required under N.M.S.A. 1978 § 56-10-19(B). Unlike § 547(f), which creates a statutory presumption of insolvency with respect to transfers made within 90 days of the date of the filing of the petition, insolvency under the New Mexico statute requires a showing of the following: 1) the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation; or 2) the debtor "is

---

[17] The New Mexico statute defines "insider" as "a relative of the debtor." N.M.S.A. 1978 § 56-10-15(H)(1)(a).

17

Case 15-01049-j    Doc 29    Filed 04/14/16    Entered 04/14/16 13:57:20 Page 17 of 18

generally not paying the debtor's debts as they become due," in which case, the debtor is "presumed to be insolvent." N.M.S.A. 1978 § 56-10-16(A) and (B). The Trustee has not presented sufficient evidence to establish the Debtor's insolvency under either of these tests at the time of the transfers.

Based on the foregoing, the Court will deny the Trustee's Motion for Summary Judgment. The Court will enter a separate order consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: April 14, 2016

COPY TO:

Michelle Ostrye
Askew & Mazel, LLC
Attorney for Plaintiff
320 Gold Avenue SW #300A
Albuquerque, NM 87102-3232

Clare Varela
Defendant
PO Box 165
Peralta, NM 87042